UNITED STATES of America,
Plaintiff–Appellee,

v.

Frances Oram HOWARD,
Defendant–Appellant.

No. 87–3118.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 1988.

Decided Feb. 3, 1989.

Lawrence Matasar, Portland, Or., for defendant-appellant.

Charles H. Turner, U.S. Atty., Leslie K. Baker, Asst. U.S. Atty., Portland, Or., for plaintiff-appellee.

Before SCHROEDER, PREGERSON and LEAVY, Circuit Judges.

PREGERSON, Circuit Judge:

This case is before us on interlocutory appeal after the district court denied the motion of Frances Oram Howard to dismiss her perjury indictment. Howard alleges that the district court erred in refusing to hold an evidentiary hearing to determine whether prosecutorial misconduct before the grand jury, including the alleged setting of a "perjury trap," requires dismissal of the indictment. Because we conclude that we do not have jurisdiction to hear Howard's interlocutory appeal, we do not reach the merits of Howard's perjury trap claim.

## I. BACKGROUND

In February 1986, Frances Oram Howard was subpoenaed as a witness before a federal grand jury in connection with an investigation of the 1982 escape from the Rocky

Butte Jail in Portland, Oregon of Howard's close friend, Stephen Kessler, and others. The grand jury was investigating whether people outside the jail assisted in the escape. The investigation focused on the origin of a small handgun that Kessler used to shoot and disable a guard during the escape.

After learning of Howard's friendship with Kessler, the government arranged to monitor conversations between Howard and James Hampton, a government informant who had been associated with Kessler. During these taped conversations—which occurred both before and after Howard's first grand jury appearance—Howard acknowledged having at one time provided some items of false identification used by Kessler following the escape. In her February 19, 1986 testimony before the grand jury, Howard denied any knowledge of or participation in the escape. Howard was not questioned about her conversations with Hampton.

Howard asserts that several months later, in the summer of 1986, FBI agents spoke with Kessler at the Federal Penitentiary in Marion, Illinois. The agents allegedly told Kessler that Howard would be indicted unless Kessler provided the agents with the name of the person who smuggled in the gun that he used in his jail escape. On April 15, 1987, more than one year after her initial appearance, Howard again was called before the grand jury and again was questioned about and denied any involvement in the escape. In response to general questions, she also denied having made any statements to anyone regarding her involvement. These denials constituted the basis for the perjury indictment against Howard. Just after Howard's April 15, 1987 grand jury appearance, the United States Attorney told Howard that the government had taped conversations which contradicted her grand jury testimony.

The indictment against Howard was returned on April 29, 1987. She was charged with making false declarations before the grand jury in violation of 18 U.S.C. § 1623. On July 1, 1987, Howard filed a motion to dismiss the indictment, alleging prosecuto-rial misconduct before the grand jury. In this motion, Howard claimed that the government called her before the grand jury for the sole or primary purpose of inducing her to commit perjury to gain leverage against her and Kessler. In support of the motion, Howard's counsel provided the district court with an affidavit by Howard, a letter from Kessler noting earlier threats, and a written summary which defense counsel stated was intended as an offer of proof.

On September 17, 1987, the district court denied Howard's motion without holding an evidentiary hearing. The court stated that Howard had not made a sufficient preliminary showing to justify discovery and a hearing. In reaching his decision, the district court judge relied in part on a conversation, held through a telephone conference call, with Kessler and other counsel in a related case, *United States v. Shirley*. The judge used Kessler's unsworn telephonic testimony to conclude that Kessler was a liar and that, therefore, his testimony in connection with Howard's contentions could not be relied upon either.

The threshold question before us now is whether we lack jurisdiction over Howard's interlocutory appeal.

## II. THE PERJURY TRAP DOCTRINE

On appeal Howard contends that the United States Attorney committed prosecutorial misconduct by setting a "perjury trap" for her, that is, by attempting first to induce her to commit perjury before the grand jury and then to force her to cooperate with the government's investigation under pain of a perjury prosecution. Howard asserts that her indictment should therefore be dismissed.

■ Under the perjury trap doctrine, dismissal of an indictment is required where the prosecutor's purpose in questioning a witness before a grand jury is to extract perjury from that defendant. *See* Gershman, *The "Perjury Trap"*, 129 U.Pa.L.Rev. 624, 683 (1981). The Ninth Circuit has not yet recognized the existence of the perjury trap doctrine. *But cf. Bursey v. United*

*States,* 466 F.2d 1059, 1080 n. 10 (9th Cir. 1972) ("If a court divines that the purpose of repetitious questioning is to coax a witness into the commission of perjury ... such conduct would be an abuse of the grand jury process."). Because we do not have jurisdiction over Howard's interlocutory appeal, we do not decide whether the perjury trap doctrine should be recognized by this circuit.

## III. JURISDICTION OVER HOWARD'S INTERLOCUTORY APPEAL

Howard contends that we have jurisdiction over her interlocutory appeal under 28 U.S.C. § 1291. Several of our recent cases address the issue whether claims of prosecutorial misconduct before the grand jury warrant interlocutory review. *United States v. Eccles,* 850 F.2d 1357 (9th Cir. 1988); *United States v. Tobias,* 836 F.2d 449 (9th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 1299, 99 L.Ed.2d 509 (1988); *United States v. Dederich,* 825 F.2d 1317 (9th Cir.1987); *United States v. Benjamin,* 812 F.2d 548 (9th Cir.1987). These cases all rely on the Supreme Court case of *Mechanik v. United States,* 475 U.S. 66, 73, 106 S.Ct. 938, 943, 89 L.Ed.2d 50 (1986), in which the defendant appealed his conviction, alleging that the prosecutor's violation of Fed.R.Crim.P. 6(d)—which limits the number of witnesses who may be present in a grand jury session to the one under examination—required dismissal of the indictment. The Supreme Court refused to hear the defendant's post-conviction appeal, holding that any deficiencies in the grand jury charging process were rendered harmless by the subsequent petit jury conviction, and therefore were unreviewable.

■ The cases cited above demonstrate that if Howard's allegations are concerned merely with alleged errors in the grand jury charging process rather than with issues of constitutional magnitude, she is entitled to interlocutory review of her claim under the doctrine of harmless error. On the other hand, if Howard's claim raises issues of fundamental fairness that implicate substantial rights protected by the due process clause, the *Eccles* holding requires it to be appealed after trial.

In *Benjamin,* the defendants moved to dismiss their perjury indictments due to an alleged violation of Fed.R.Crim.P. 6(e)(2), which mandates secrecy of matters occurring before the grand jury. The motion was denied by the district court. We concluded that the district court's order denying the motion was appealable under 28 U.S.C. § 1291 as a collateral order. 812 F.2d at 553. We based our holding on *Mechanik,* stating that the Supreme Court's harmless error rule would also be applicable to the defendants' claims. *Benjamin,* 812 F.2d at 552. Thus, an interlocutory appeal would be the defendants' only opportunity to challenge the district court's order.

Before reaching this conclusion, the court in *Benjamin* analyzed three conditions which must be satisfied before the district court's denial of the defendants' motion could be appealed as a collateral order under the doctrine of *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–1226, 93 L.Ed. 1528 (1949). To qualify for this exception to the final judgment requirement, the order under appeal must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from a final judgment. *Benjamin,* 812 F.2d at 550. In *Benjamin,* we stated that because the *Mechanik* harmless error rule rendered the defendants' claims of prosecutorial misconduct unreviewable after trial, the third and most difficult *Cohen* requirement was satisfied. *Id.* at 553.

After holding that we had jurisdiction over the defendants' interlocutory appeal, we noted in *Benjamin* that the Tenth Circuit had dismissed an interlocutory appeal based on somewhat similar facts. *Id.* In *United States v. Taylor,* 798 F.2d 1337, 1338 (10th Cir.1986), the defendants had moved for dismissal of their indictment due to the outrageous behavior of the prosecution, which included "[invading] the defense camp," failing to present exculpatory

evidence to the grand jury, and biasing the grand jury with "inadmissible, inflammatory, and prejudicial evidence." The court of appeals dismissed the defendants' interlocutory appeal, holding that the grand jury irregularities could be effectively reviewed after final judgment. *Taylor,* 798 F.2d at 1340.

As we explained in *Benjamin* in distinguishing *Taylor,* "[t]he allegations of the [defendants in *Taylor*] went beyond the question of probable cause and attacked the 'fundamental fairness' of the criminal proceedings, which would be justiciable after final judgment and not subject to the *Mechanik* harmless error analysis." *Benjamin,* 812 F.2d at 553 (discussing *Taylor,* 798 F.2d at 1340). In *Benjamin,* we stated that it was not necessary for us to decide whether we agreed with the *Taylor* court's characterization of its defendants' claims because, in *Benjamin,* the defendants' claims were "sufficiently aimed at the grand jury's charging process that they [fell] within the ambit of *Mechanik.*" *Benjamin,* 812 F.2d at 553.

In *Dederich,* we similarly found that the defendants' claims of prosecutorial misconduct before the grand jury—including allegations of harassment of witnesses, presentation of irrelevant and false evidence, and abuse of the grand jury's subpoena power—essentially went to improper effect on the grand jury's decision to indict. 825 F.2d at 1320. Any misconduct was therefore harmless error and a conviction by a petit jury would "[wipe out] any prejudice ... resulting from the allegedly erroneous charging decisions." *Id.* In *Dederich,* we also addressed the question whether the defendants' claims satisfied the second *Cohen* requirement under which an important issue completely separate from the merits of the action must be resolved to be appealable as a collateral order. We stated that "prosecutorial misconduct before the grand jury, examined prior to trial for its effect on the indictment, is not truly related to the merits of the criminal trial.... [A] decision by this court on the present appeal will have no effect on the trial court's

determination of guilt or innocence...." *Dederich,* 825 F.2d at 1320.

In *Tobias,* the defendant appealed allegedly improper preindictment procedures after he was convicted of the underlying charges. We held that the harmless error doctrine rendered the defendant's claim of nondisclosure of grand jury transcripts unreviewable after trial. 836 F.2d at 452. We explained that the "general inadequacies into which Tobias wished to probe through discovery affect more the grand jury's charging process than the fundamental fairness of the criminal proceedings." *Id.* The defendant therefore should have sought interlocutory review rather than appealing after his conviction. *Id.*

In *Eccles,* the most recent case in which we addressed the *Mechanik/Benjamin* harmless error rule, we had to determine whether we had jurisdiction over the defendant's *untimely* interlocutory appeal. 850 F.2d at 1362. We stated that, because the appeal was untimely, we could assert jurisdiction only if failure to hear the defendant's appeal would violate her constitutional rights. *Id.* at 1363. The defendant argued that her due process rights would be violated if the court failed to hear her appeal because *Mechanik's* harmless error doctrine would render her claim unappealable after trial. *Id.* at 1364. In holding that we lacked jurisdiction over the defendant's appeal, we explained that *Mechanik* and *Benjamin* eliminated post-conviction review only of harmless errors. *Id.* We then stated:

> Conversely, post-conviction review remains available under *Mechanik* and *Benjamin* where the defendant has alleged prosecutorial misconduct that does implicate substantial rights protected by the due process clause. Therefore, the defendant's constitutional rights will not be violated by her inability to obtain interlocutory review of claims of misconduct before the grand jury.

*Id.*

Howard's perjury trap claim challenges the fundamental fairness of the

criminal proceedings.[1] Her claim resembles the claim of vindictive or selective prosecution in that, unlike many other allegations of prosecutorial misconduct, these claims challenge the validity of the criminal action itself rather than merely alleging prosecutorial errors in the charging process. When vindictive or selective prosecution is alleged, the claim is not subject to interlocutory appeal because it is not effectively unreviewable on appeal from a final judgment. *United States v. Hollywood Motor Car Co., Inc.*, 458 U.S. 263, 270, 102 S.Ct. 3081, 3085, 73 L.Ed.2d 754 (1982); *United States v. Sasway*, 686 F.2d 748, 748 (9th Cir.1982).

■ Similarly, the right asserted by Howard "is simply not one that must be upheld prior to trial if it is to be enjoyed at all." *Hollywood Motor Car Co.*, 458 U.S. at 270, 102 S.Ct. at 3085.[2] First, unlike for example a double jeopardy claim, her claim does not involve the alleged right to be free from trial altogether. *Id.* at 266, 102 S.Ct. at 3083. Furthermore, because Howard's contention raises issues of fundamental fairness, the *Mechanik/Benjamin* harmless error rule will not bar post-conviction review of her claim. *See Eccles*, 850 F.2d at 1364 (post-conviction review remains available where prosecutorial misconduct is alleged that implicates substantial rights protected by the due process clause).

Because Howard's claim is not "an asserted right the legal and practical value of which would be destroyed if it were not vindicated before trial," *Hollywood Motor Car Co., Inc.*, 458 U.S. at 266, 102 S.Ct. at 3083 (quoting *United States v. MacDonald*, 435 U.S. 850, 860, 98 S.Ct. 1547, 1552–1553, 56 L.Ed.2d 18 (1978)) it is not

subject to interlocutory appeal. If she is ultimately convicted of perjury, Howard may then appeal the district court's denial of her motion to dismiss the indictment.

DISMISSED.

---

1. The district court stated that the "gist of the [perjury trap] defense is that it is an abuse of the grand jury process and violation of due process fairness ..." ER at 19. Courts in other jurisdictions that have discussed the perjury trap doctrine have found that a perjury trap claim raises due process issues. *See, e.g., United States v. Phillips*, 674 F.Supp. 1144, 1146 (E.D. Pa.1987) (the perjury trap theory, which asserts that prosecutorial misconduct was "so severe as to constitute a violation of the witness' due process rights.... has received some judicial support").

2. Prior to *Mechanik*, the Supreme Court had invoked the collateral order exception to the rule of finality in criminal cases on only three occasions. *See Helstoski v. Meanor*, 442 U.S. 500, 99 S.Ct. 2445, 61 L.Ed.2d 30 (1979) (denial of Congressman's motion to dismiss prosecution prohibited by speech or debate clause of Constitution); *Abney v. United States*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977) (denial of pretrial motion to dismiss indictment on double jeopardy grounds); *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951) (denial of motion to reduce bail).